NOT FOR CITATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT W. MCGRUDER,<br><br>   Petitioner,<br>   vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>   Respondent. | No. C 06-6525 JF (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(Docket No. 10) |

## INTRODUCTION

Petitioner Robert McGruder, a California state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the Governor's reversal of a decision by the Board of Prison Terms ("BPT" or "Board") that he is suitable for parole. The Court directed Respondent to show cause why the cognizable claims should not be granted. Respondent has filed an answer addressing the merits of the petition, and Petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claim presented and will DENY the petition.

## BACKGROUND

The charges against Petitioner arose from his shooting and murder of a man in Los Angeles in 1985. On May 7, 1985, at 12:01 a.m., Petitioner drove to a telephone booth and stepped out of the car to make a call, but he did not make the call because he was being harassed by four to five youths. Ans., Ex. C (Parole Hearing Transcript, Dec. 17, 2003) at 6, 8; Ex. E (Psychological Evaluation, May 28, 2002) at 3. Petitioner mentioned the fact that he lived in the Watts area of Los Angeles. Id., Ex. C at 8-9. The youths stated that they did not like the color of Petitioner's car and that he should leave the area. Id. at 9. Petitioner returned to his car and drove by the group, yelling, "Tell [the victim] that the guy in a blue vehicle did this." Id. Petitioner then picked up a gun he had in the car and fired one shot through the passenger's window, hitting the victim in the head and killing him. Id.

Petitioner pleaded guilty in 1986 to second-degree murder (Cal. Pen. Code § 187) and admitted to the allegation that he used a firearm (Cal. Pen. Code § 12022.5). Ans., Ex. A (Abstract of Judgment). The Los Angeles Superior Court sentenced Petitioner to a prison term of seventeen years to life.[1] Id.

In December 2003, the BPT found that Petitioner, who had been considered for parole five previous times, was suitable for parole and would not pose an unreasonable risk of danger to society or a threat to public safety if released.[2] Id. at 59. Impressed by Petitioner's record of positive institutional behavior and his participation in treatment programs such as Narcotics Anonymous, the BPT found that "because of maturation, growth and greater understanding[, Petitioner] has a reduced probability of recidivism." Id. at 60. It also found that "[Petitioner] has realistic parole plans which include job offer and family support." Id.

In May 2004, Respondent Arnold Schwarzenegger, the Governor of California, while noting Petitioner's highly positive record in prison, reversed the BPT's decision, citing concern

---

[1] The presiding commissioner at the 2003 parole hearing stated that the term was sixteen years to life. Ans., Ex. C at 1.

[2] Petitioner states that the 2003 parole hearing was his seventh such hearing. Pet., P. & A. at 5.

1  with Petitioner's attempts to justify his commitment offense, the casual manner in which
2  Petitioner had fired into the group – which indicated an exceptionally callous disregard for
3  human suffering – Petitioner's long criminal history, and the likelihood of recidivism.  Ans., Ex.
4  D (Governor's Indeterminate Sentence Parole Release Review) at 1-2.  The Los Angeles County
5  District Attorney's office "has taken a neutral position on [the question of Petitioner's] parole."
6  Id. at 3; Ex. C at 50.

7  In response to the Governor's decision, Petitioner filed state habeas petitions, all later
8  denied, in the California superior, appellate and supreme courts.  Pet. at 3-4.  In 2006, Petitioner
9  filed the instant federal petition.  As the basis of federal habeas relief, Petitioner alleges that the
10 Governor's reversal was based upon insufficient evidence and violated the terms of his plea
11 agreement, depriving him of his reciprocal benefit of lessened punishment and his state and
12 federal due process rights under the Fifth and Fourteenth Amendments.  Order to Show Cause
13 ("OSC") at 2; Pet. at 13, 16, 21.

### DISCUSSION

**A.      Standard of Review**

16 This Court will entertain a petition for writ of habeas corpus "in behalf of a person in
17 custody pursuant to the judgment of a State court only on the ground that he is in custody in
18 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

19 The petition may not be granted with respect to any claim that was adjudicated on the
20 merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision
21 that was contrary to, or involved an unreasonable application of, clearly established federal law,
22 as determined by the Supreme Court of the United States; or (2) resulted in a decision that was
23 based on an unreasonable determination of the facts in light of the evidence presented in the
24 State court proceeding."  28 U.S.C. § 2254(d).

25 "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state
26 court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of
27 law or if the state court decides a case differently than [the] Court has on a set of materially

indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.     Petitioner's Claims**

    **1.     Due Process**

Petitioner alleges that the Governor's decision was based upon insufficient evidence, depriving him of his reciprocal benefit of lessened punishment and his state and federal due process rights under the Fifth and Fourteenth Amendments. OSC at 2; Pet. at 13, 16, 21. The Governor's stated reasons for the reversal were: Petitioner's "apparent attempts to justify his

actions" as acts taken in self-defense; his opinion that Petitioner's "deliberate actions and seemingly casual manner in which he fired his gun into a group of people demonstrate an exceptionally callous disregard for human suffering and life"; his view that the motive for the crime – "neighborhood rivalry or for some other sinister reason – is trivial in relation to the offense"; and Petitioner's long criminal history and the escalation of his criminal conduct and his inability to learn from his mistakes. Ans., Ex. D at 1-2.

The Governor of California may review parole board decisions and may affirm, modify or reverse such decisions. C.A. CONST. art. V, § 8(b). The Governor does not have unfettered discretion, but rather must base his decision on "the same factors which the parole authority [here, the Board,] is required to consider." Id. Obviously, the Governor is not required to reach the same decision as the Board, even if both the Governor and the Board consider the same factors.

The Board complies with due process provided that there is "some evidence" to support its decision. The Supreme Court has explained that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) (same). The evidence underlying the Board's decision must have some indicia of reliability. McQuillion, 306 F.3d at 904. Accordingly, if the Board's determination of parole suitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

In assessing whether there is "some evidence" to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. "The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.JF\HC.06\McGruder525.hcruling.md

1  and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of
2  danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). The regulations
3  enumerate various circumstances tending to indicate whether or not an inmate is suitable for
4  parole. Id., § 2402(c)-(d).³ One circumstance tending to show an inmate's unsuitability is that
5  the crime was committed in an "especially heinous, atrocious or cruel manner." Id., § 2402(c).
6  Two factors that the parole authority may consider in determining whether such a circumstance
7  exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally
8  callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable
9  or very trivial in relation to the offense." Id., § 2402(c)(1)(D) & (E).

Applying this law to the instant case, the Court concludes that there is some evidence to support the Governor's decision. First, there is evidence to support the Governor's finding that Petitioner committed the offense in a manner that demonstrates an exceptionally callous disregard for human suffering. The record shows that Petitioner, after a brief argument, recklessly fired at a group of young men as he drove off in his vehicle. The same evidence also supports the Governor's finding that the motive for the crime – assuaging a bruised ego or perhaps a dispute over gang colors – was trivial in relation to the murder. The Governor also considered Petitioner's criminal history, which includes a conviction for armed robbery. Because the record contains at least some evidence to support the Governor's finding that Petitioner was unsuitable for parole, Petitioner's claim that he was denied due process is without merit.

---

5. The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.JF\HC.06\McGruder525.hcruling.md

**2.     Plea Agreement**

Petitioner next contends that the Governor's use of Petitioner's prior convictions as a reason to reverse the Board's decision violates the terms of his plea agreement, because he was assured at the time of his plea that these convictions would not be used to calculate his sentence. Pet., P. & A. at 21.  Petitioner also contends that the Governor's reversal of the Board's decision violates the Ex Post Facto Clause. Id.

       **a.     Use of Petitioner's Criminal History**

A defendant has a due process right to enforce the terms of his plea agreement. See Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006) (en banc).  When a guilty plea " rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971).

Here, Petitioner's claim regarding the effect of his plea agreement is without merit. Petitioner bases his claim on a statement made by the trial court at his sentencing hearing: "[As part of the plea agreement,] the People would not present any evidence as to the alleged prior conviction so that would be stricken for the purposes of the sentence." Pet., Ex. 2 (Transcript of Sentencing Hearing, June 4, 1986) at 2.  By this statement, the state sentencing judge simply was making clear that, per the plea agreement, Petitioner's prior convictions, if any, were not part of *the judge's* sentencing determination.  The statement relates to the length of the sentence imposed at the time of the plea, not to whether Petitioner might be suitable for parole in the future or to whether the parole authority might consider Petitioner's prior convictions in determining suitability.  The record contains no support for Petitioner's assertion that denial of parole many years later somehow violated his plea agreement.

       **b.     Ex Post Facto**

Petitioner also contends that the Governor's reversal of the Board's decision violates the Ex Post Facto Clause. Pet., P. & A. at 21.  The Court notes that Article V, section 8(b) of the California Constitution, which grants the Governor power to review, modify and, as in the

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.JF\HC.06\McGruder525.hcruling.md

7

1  instant case, reverse decisions of the BPT, was adopted in 1988, several years after petitioner
2  committed his commitment offense.[4]

3  Application of the Ex Post Facto clause is limited to criminal legislation that effects an
4  increase in punishment, criminalizes conduct that was not previously criminal, or requires less
5  proof for conviction of an offense than previously was required. See Collins v. Youngblood, 497
6  U.S. 37, 42 (1990) (citing Calder v. Bull, 3 Dall. 386, 390 (1798) (rejecting a claim that a law
7  that provided for a new level of hearings in probate cases could not be applied retroactively)).
8  The Ex Post Facto Clause also forbids the states from enhancing the measure of punishment by
9  significantly reducing a prisoner's opportunity to shorten his prison term by altering the
10 "substantive formula" used to calculate parole eligibility or suitability, see Weaver v. Maas, 53
11 F.3d 956, 959, 960 n.5 (9th Cir. 1995). Garner v. Jones, 529 U.S. 244 (2000) identified two
12 methods by which a convict may attack a substantial change in parole standards under the Ex
13 Post Facto Clause. First, the convict may show that the new rule "by its own terms [creates] a
14 significant risk of increasing punishment" for the crime. Id. at 253-55. If such a facial challenge
15 fails, the convict may "demonstrate, by evidence drawn from the rule's practical implementation
16 by the agency charged with exercising discretion, that its retroactive application will result in a
17 longer period of incarceration than under the earlier rule." Garner, 529 U.S. at 255.

18 However, a new state law that simply alters "'the method to be followed' in fixing a
19 parole release date under identical substantive standards" is not enough. See California
20 Department of Corrections v. Morales, 514 U.S. 499, 507-08 (9th Cir. 1996); cf. Johnson v.
21 Gomez, 92 F.3d 964, 967 (9th Cir. 1996) (retroactive application of law that transfers final
22 decision on parole from Board of Prison Terms to governor does not violate Ex Post Facto
23 Clause). For example, extending the period between parole hearings for prisoners convicted of
24 more than one murder who committed their crimes before the extension was enacted does not

---

5. On November 8, 1988, "California voters approved Proposition 89, which added Section 8(b) to Article V of the California Constitution to provide for review [of parole board decisions] by the governor." Johnson v. Gomez, 92 F.3d 964, 965 (9th Cir. 1996).

violate the Ex Post Facto Clause because it "creates only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes." See Morales, 514 U.S. at 509; cf. Johnson v. Gomez, 92 F.3d at 967 (change in parole decision making does not violate Ex Post Facto Clause where petitioner had not actually been granted parole by Board of Prison Terms under old law). Johnson forecloses Petitioner's claim that the Governor's reversal in this case violates the Ex Post Facto Clause. Because the Governor's review is based on the same criteria and record used by the BPT, the additional layer of review itself is neutral and does not, in and of itself, increase Petitioner's punishment.

Even if Petitioner had demonstrated that granting the Governor the authority to review parole board decisions was in fact a substantial change in parole standards, Petitioner's claim also fails under Garner, which was decided after Johnson. Garner directs this Court to examine first whether the change by its own terms creates a significant risk of increasing the punishment. As discussed in the preceding paragraph, because it leaves untouched the standards by which parole eligibility is determined, the law at issue in the present petition does not create such a risk. Garner also directs this Court to determine whether Petitioner has shown that the rule's practical implementation by the parole authority will result in a longer period of incarceration than he would have had under the old rule. In this case, Petitioner has not overcome the presumption that the Governor followed the "statutory commands and internal policies in fulfilling [his] obligations." Garner, 529 U.S. at 256.

## CONCLUSION

Applying the highly deferential standard imposed by the AEDPA, this Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (1), (2). Accordingly, the Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. The petition for writ of habeas corpus is DENIED. The Clerk shall enter judgment and close the file.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.JF\HC.06\McGruder525.hcruling.md

The Court GRANTS Petitioner's motion (Docket No. 10) to file a supplement to his traverse.

**IT IS SO ORDERED.**

DATED: 8/26/08

_____
JEREMY FOGEL
United States District Judge

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.JF\HC.06\McGruder525.hcruling.md